1

2

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11

12    DANNY VINCI,                                    Civil No. 13cv1756-BTM (PCL)

13                               Petitioner,          **ORDER:**

14                                                    **(1) ADOPTING IN PART AND**
          vs.                                         **DECLINING TO ADOPT IN PART THE**
15                                                    **FINDINGS AND CONCLUSIONS OF**
                                                      **UNITED STATES MAGISTRATE**
16                                                    **JUDGE;**

17    DANIEL PARAMO, Warden,                          **(2) DENYING PETITION FOR A WRIT**
                                                      **OF HABEAS CORPUS; and**
18                               Respondent.
                                                      **(3) ISSUING A CERTIFICATE OF**
19                                                    **APPEALABILITY**

20         Danny Vinci (hereinafter "Petitioner"), is a California prisoner proceeding pro se and in

21    forma pauperis with a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254,

22    challenging his San Diego Superior Court convictions for assault with caustic chemicals, making

23    a criminal threat, and corporal injury to a spouse or cohabitant.  (ECF No. 1.)  He alleges here,

24    as he did in state court, that his federal Constitutional rights were violated by the admission of

25    propensity evidence in the form of the testimony of three former girlfriends regarding prior acts

26    of domestic violence, and by the admission of the prior testimony of one of those witnesses after

27    she was declared unavailable without a showing that the prosecutor had made a good-faith effort

28    to secure her presence at trial.  (Pet. at 16-36.)

1      United States Magistrate Judge Peter C. Lewis has filed a Report and Recommendation

2  ("R&R") which recommends the Petition be denied because the adjudication of the claims by

3  the state court is neither contrary to, nor involves an unreasonable application of, clearly

4  established federal law.  (R&R at 8-14.)  Petitioner has not filed Objections to the R&R.

5      The Court has reviewed the R&R pursuant to 28 U.S.C. § 636(b)(1), which provides that:

6  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or

7  recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  For the following

8  reasons, the Court **ADOPTS** the Magistrate Judge's findings and conclusions as to Claims 1-3,

9  **REJECTS** the findings and conclusions as to Claim 4, which it will consider in the first

10  instance, **DENIES** the Petition, and **ISSUES** a Certificate of Appealability as to all claims.

11  **1.     Claims 1-3**

12      Petitioner alleges in Claims 1-3 that his federal constitutional right to due process was

13  violated by the admission of propensity evidence in the form of testimony by three prior

14  girlfriends regarding acts of domestic violence by Petitioner, and alleging that the two California

15  Evidence Code sections permitting admission of that evidence are unconstitutional on their face

16  and as applied.  (Pet. at 16-33.)  The Magistrate Judge correctly found that the Ninth Circuit has

17  held that because the United States Supreme Court has specifically reserved ruling on the issue

18  regarding whether introduction of propensity evidence in a state trial could violate federal due

19  process, and has denied certiorari at least four times on the issue since, there is no "clearly

20  established federal law" on the issue, precluding habeas relief where 28 U.S.C. § 2254(d)

21  applies.  Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006).

22      The Court **ADOPTS** the Magistrate Judge's findings and conclusions that Petitioner has

23  not satisfied the requirements of 28 U.S.C. § 2254(d) with respect to Claims 1-3, and **DENIES**

24  habeas relief as to those claims for the reasons set forth in the R&R.

25  **2.     Claim 4**

26      In his final claim, Petitioner alleges that his federal Constitutional right to confront the

27  witnesses against him was violated by the finding that Amy Seckman, one of the three women

28  who testified about prior instances of domestic violence, was unavailable to testify at his trial

-2-                                            13cv1756

1  without a showing that the prosecution had made a good-faith effort to secure her attendance.

2  (Pet. at 33-36.)  The Magistrate Judge found that Petitioner had not satisfied the requirements

3  of 28 U.S.C. § 2254(d) with respect to the state court adjudication of this claim.  (R&R at 13-

4  14.)  Specifically, the Magistrate Judge found that the state court's finding that the witness was

5  medically unavailable was not an unreasonable application of clearly established federal law

6  which provides that the prosecution must make a good-faith effort to secure the presence of a

7  witness at trial before she is considered unavailable, but that a federal habeas court cannot grant

8  relief merely because additional steps may have been taken to secure the witness.  (Id.)  The

9  Magistrate Judge found the prosecutor had reasonably relied on the fact that the witness had

10 cooperated and appeared voluntarily in the past, and the failure to subpoena her did not defeat

11 a showing of good faith.  (Id.)  Finally, the Magistrate Judge found that because the witness had

12 been cross-examined during her prior testimony, the confrontation requirement had been

13 satisfied.  (Id.)

14      At the end of the prosecution's case-in-chief, just before Amy Seckman, the last

15 prosecution witness, was scheduled to testify, the following exchange took place:

16 The Court:   We need to deal with the issue of the L.I.O.  We need to deal with
               the issue of the witness.
17
18 [Prosecutor]: Let's begin with the witness.  My first problem was I thought she
               wouldn't be here until tomorrow, but that's no longer the bigger
19             issue.  She's not going to be here at all.  Her child went into
               surgery.  We knew that there was always a possibility of some
20             problem with her child.  Her child was sick for quite some time, but
               didn't think it would come down to this.  But in any event, she will
21             not be here.  She will not be testifying.

22             She is not subpoenaed.  She is out of state.  We did not use an out-
               of-state subpoena because she was cooperative all along.  She
23             cooperated in the first trial, voluntarily flew out and testified, and
               was just as cooperative even now.  It's only due to these unexpected
24             circumstances that she's not coming.  So she won't be testifying.

25             The next issue is whether or not I can put her testimony on through
               Evidence Code 1294 or by agreement of defense counsel.  The one
26             concern I have, I've looked at Evidence Code 1294 prior testimony;
               and I've also looked at section 240 which requires 1294 for the
27             witness to be unavailable.  And my only legal concern is whether
               she is actually unavailable and whether the court would be willing
28             to find her unavailable.  The law requires that the prosecution make
               a good faith effort to secure attendance of this witness.

1
2
3
4

I have my paralegal present.  If necessary, she could certainly testify to all of the efforts she made.  However, I have to concede she has not been subpoenaed, so we have not made proper efforts through an out-of-state subpoena.  I concede that.  We have made certainly diligent efforts in terms of working with her and making arrangements with her.  So that's – you know, I'll just – that's where we stand on that issue.

5   The Court:    Okay.  Ms. Cannon [Defense counsel].

6
7
8
9

Ms. Cannon: Without proper proof of service, I think they have not shown due diligence.  We're just hearing that there could be this problem with the witness.  There's no proof of that.  She certainly is not under any compulsion to be here, under any court order to be here.  They haven't done the first thing that's required to do due diligence.  [¶] The other thing that I would argue is that it's cumulative anyway and an undo waste of time.  But more importantly, I don't think they established the elements.

10
11

The Court:    I'll find she's medically unavailable.  Therefore, you can read her through her prior testimony.

12   (Lodgment No. 2, Reporter's Tr. ["RT"] at 1768-69.)

13       Petitioner alleged on direct appeal, as he does here, that his Sixth Amendment right to

14   confront Seckman was violated because the prosecution conceded it had made no efforts to

15   procure her presence at trial, and that the state law exception for medical unavailability applies

16   only to witnesses, not their children.  (Lodgment No. 3 at 57-66.)  Petitioner also alleged the

17   error was prejudicial because her testimony involved egregious conduct by Petitioner, which was

18   remote in time, of his having thrown a patio chair through Seckman's window, threatened her

19   with a gun, and defaced her house, and because the defense objections made during her previous

20   testimony were redacted when her testimony was read to the jury.  (Id. at 66-68.)

21       The last reasoned decision of the state court with respect to this claim is the state appellate

22   court opinion, which states:

23
24
25

Evidence Code section 1291, subdivision (a)(2) provides a hearsay exception for former testimony when the witness is unavailable and "(t)he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

26

27
28

The record here shows that Seckman intended to testify at trial but could not do so because her daughter had surgery.  In disclosing this fact, the prosecutor noted that Seckman, although living out of state, had not been subpoenaed because all along she had been cooperative, including voluntarily appearing to testify in Vinci's first trial, [FN 9: Vinci's first trial ended in a mistrial after a witness (not

1    Seckman) testified about an incident previously ruled inadmissible by the court]
     where she was subject to cross-examination. Based on the prosecutor's
2    representation, the trial court ruled Seckman was "medically unavailable" and, as
     noted *ante*, allowed her former testimony on direct and cross-examination to be
3    read into the record.

4          Vinci contends the trial court erred and violated his right to "confront" a
     witness (see U.S. Const., 6th Amend. & Cal. Const., art. I, § 15) when it found
5    Seckman "unavailable" under Evidence Code section 1291 and allowed her
     former testimony to be read into the record at trial. We disagree.

6
           "Both the United States Supreme Court and (our Supreme Court) have
7    concluded that 'when a defendant has had an opportunity to cross-examine a
     witness at the time of his or her prior testimony, that testimony is deemed
8    sufficiently reliable to satisfy the confrontation requirement (citation), regardless
     whether subsequent circumstances bring into question the accuracy or
9    completeness of the earlier testimony. (Citation.)'" (*People v. Wilson* (2005) 36
     Cal.4th 309, 343, citing *California v. Green* (1970) 399 U.S. 149 (90 S.Ct. 1930).)
10
           In any event, even assuming the trial court erred in finding Seckman
11   medically unavailable for purposes of Evidence Code section 1291 based on the
     representation of the prosecutor, we conclude that error was harmless beyond a
12   reasonable doubt. (See *People v. Geier* (2007) 41 Cal.4th 555, 608 (applying
     harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24 (87
13   S.Ct. 824) to alleged confrontation clause violation).) Indeed, the record shows
     Seckman testified in Vinci's first trial and was subject to rigorous cross-
14   examination regarding Vinci's acts of domestic violence against her. In addition,
     the record also shows that O'Dell and Leicester each testified about prior acts of
15   domestic violence by Vinci. Thus, evidence of Vinci's prior acts of domestic
     violence did not hinge solely or exclusively on Seckman's testimony.
16
           Finally, the evidence against Vinci with respect to the charged crimes was
17   overwhelming and, in any event, as we have noted Vinci does *not* directly
     challenge the sufficiency of that evidence in contending the trial court erred in
18   finding Seckman unavailable. That evidence included the testimony of two
     eyewitnesses who saw Vinci spray Kopp with a liquid that smelled like gasoline
19   (count 1, assault with caustic chemicals in violation of section 244) and then
     pursue her as she attempted to get away; Vinci's threat to Kopp when he sprayed
20   her with gasoline that "(y)ou're going to die, you fucking bitch" as he attempted
     to light her on fire (count 2, making a criminal threat in violation of section 422);
21   and the testimony of Kopp that on February 21, 2010, Vinci choked her after she
     refused to return to the bedroom with him, which testimony was corroborated by
22   a series of photographs taken after the incident showing bruising to Kopp's neck,
     face, chest and arms; a laceration to her tongue that she bit during the struggle to
23   free herself; and discoloration to her eyelids from small blood vessels that had
     burst while she was being choked (count 4, corporal injury to a spouse or
24   cohabitant in violation of section 273.5, subd. (a)).

25         We thus conclude beyond a reasonable doubt that a rational jury would
     have found Vinci guilty of counts 1, 2 and 4 absent the trial court's presumed error
26   in admitting Seckman's former testimony recounting acts of domestic violence by
     Vinci.

27

28   (Lodgment No. 6, <u>People v. Vinci</u>, No. D060481, slip op at 20-23 (Cal.Ct.App. Oct. 4, 2012).)

1       "The constitutional requirement that a witness be 'unavailable' before his prior testimony

2   is admissible stands on separate footing that is independent of and in addition to the requirement

3   of a prior opportunity for cross-examination." United States v. Yida, 498 F.3d 945, 950 (9th Cir.

4   2007), citing Barber v. Page, 390 U.S. 719, 724-25 (1968) (holding that admission of prior

5   testimony violated the Confrontation Clause because the state did not prove the witness was

6   unavailable irrespective of whether the witness was cross-examined during prior testimony).

7   Thus, the state appellate court, to the extent it found the federal confrontation requirement had

8   been satisfied because Seckman had been cross-examined during her previous testimony

9   irrespective of whether a good faith attempt was made to secure her attendance at trial, rendered

10  a decision that is contrary to, or an unreasonable application of, clearly established federal law.

11  Williams v. Taylor, 529 U.S. 362, 405-07 (2000) (holding that a state court's decision may be

12  "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that

13  contradicts the governing law set forth in [the Court's] cases"; and that a state court decision

14  may involve an "unreasonable application" of clearly established federal law, "if the state court

15  identifies the correct governing legal rule from this Court's cases but unreasonably applies it to

16  the facts of the particular state prisoner's case.")

17      In addition, clearly established federal law provides that "a witness is not 'unavailable'

18  for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made

19  a good-faith effort to obtain his presence at trial." Hardy v. Cross, 565 U.S.___, 132 S.Ct. 490,

20  493 (2011), citing Barber, 390 U.S. at 724-25.  The Magistrate Judge correctly noted that "the

21  deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to

22  overturn a state court's decision on the question of unavailability merely because the federal

23  court identifies additional steps that might have been taken." Hardy, 132 S.Ct. at 494; but see

24  Barber, 390 U.S. at 723 (finding lack of good faith where "the State made absolutely no effort

25  to obtain the presence of [the witness] at trial other than to ascertain that he was in a federal

26  prison [in another state].")  As quoted above, the prosecutor admitted they had anticipated a

27  possibility that the witness may have a problem with her child but did not subpoena her, and

28  offered to provide information on what efforts had been expended to secure Seckman's presence

1   at trial.  However, a record was not made on what efforts were taken.  In their response on direct

2   appeal to Petitioner's contention that there was no showing of a good faith effort, the People

3   provide no details regarding their efforts in that regard, arguing only that any error in that regard

4   was harmless.  (See Lodgment No. 23 at 10-13.)  Thus, the record does not support a finding,

5   one way or the other, whether the prosecution made a good-faith effort to secure Seckman's

6   attendance.  See Ohio v. Roberts, 448 U.S. 56, 74 (1980) ("The lengths to which the prosecution

7   must go to produce a witness is a question of reasonableness . . . [and] the ultimate question is

8   whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate

9   and present that witness."), overruled on other grounds by Crawford v. Washington, 541 U.S.

10  36, 60 (2004).  In making the determination of unavailability without developing the record

11  regarding the steps taken by the prosecutor to secure the attendance of the witness, the state

12  appellate court's finding of unavailability is contrary to, or an unreasonable application of,

13  clearly established federal law in that respect as well.  Williams, 529 U.S. at 405-07; Hardy, 132

14  S.Ct. at 494; Roberts, 448 U.S. at 74; Barber, 390 U.S. at 723.  The Court **DECLINES** to adopt

15  the Magistrate Judge's findings and conclusions with respect to Claim 4, and will address the

16  claim in the first instance.

17        As set forth above, the state appellate court found the error harmless.  The Supreme Court

18  has indicated that when a federal habeas court is reviewing a state court's harmless error

19  determination under Chapman v. California, 386 U.S. 18 (1967), as here, it is required to

20  determine whether the assumed error was harmless under the standard of Brecht v. Abrahamson,

21  507 U.S. 619, 637 (1993), even if Petitioner has satisfied the provisions of 28 U.S.C. § 2254(d).

22  Fry v. Pliler, 551 U.S. 112, 119-22 (2007); see Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir.

23  2010) (holding that a federal habeas court "need not conduct an analysis under AEDPA of

24  whether the state court's harmlessness determination on direct review . . . was contrary to or

25  involved an unreasonable application of clearly established  federal law . . . because the Brecht

26  test 'obviously subsumes' the more liberal" AEDPA standard), quoting Fry, 551 U.S. at 119-20.

27  Thus, although Petitioner has satisfied the provisions of § 2254(d) with respect to the

28  unavailability prong of his confrontation claim, he is not entitled to federal habeas relief unless

1   he can show that the error in finding Seckman unavailable without ensuring the prosecution had

2   made a good faith effort to secure her presence at trial had a "substantial and injurious effect or

3   influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

4       As the appellate court pointed out, the evidence against Petitioner was overwhelming.

5   His victim testified that after Petitioner hit her in the head with an "extremely hard blow," she

6   learned that three other women had restraining orders against him, and decided to end the

7   relationship. (RT 1356-58, 1453-57.) The victim testified about three "stalking incidents"

8   thereafter where Petitioner frightened her. (RT 1360-65.) On one occasion, after those

9   incidents, Petitioner choked her to the point where she felt herself "slipping away," thought she

10  was going to die, and lost control of her bladder, and he stopped only because her dog attacked

11  him. (RT 1369-78, 1460-67.) Corroborative evidence of the incident included photographs of

12  her neck, face, chest and arms showing they were bruised, that blood vessels in her eyes had

13  burst, and her tongue was lacerated. (RT 1383-88.) On another occasion, the victim drove to

14  a dance studio to pick up her granddaughter, arrived early, and while waiting in the car smelled

15  gasoline and saw Petitioner behind the car with a "very strange" and angry look on his face. (RT

16  1389-96.) When she tried to exit the vehicle, Petitioner attempted to stop her, and then squirted

17  her with a liquid that smelled like gasoline wetting her hair, face and clothes, said: "You're

18  going to die, you fucking bitch," and attempted to set her on fire, but his lighter failed. (RT

19  1396-1401.) Three bystanders testified that they observed the incident. (RT 1546-1679.) When

20  Petitioner was arrested, an empty gas can and several lighters, some of which worked and some

21  which did not, were found in the car. (RT 1614-19.)

22      In addition to Seckman, two of Petitioner's former girlfriends, O'Dell and Leicester,

23  testified about acts of domestic violence by Petitioner. O'Dell testified that when she broke up

24  with Petitioner after a three-week relationship in 1999 he locked her in a garage and pushed her

25  to the floor. She escaped and attempted to call 911 but he ripped the phone cord out of the wall.

26  As she drove away he hit and dented the hood of her truck and pursued her in his vehicle for

27  some distance. (RT 1492-98.) She obtained a restraining order against him. (RT 1498-99)

28  Leicester testified that on one occasion in 2008 during their relationship Petitioner, in reaction

1   to her telling him that she was not feeling up to having sex, swung his fist at her face and hit her

2   in the back of the head "really hard" as she turned away.  (RT 1658-60.)  She obtained a

3   restraining order which forced him to move out.  (RT 1660-70.)

4          Seckman testified that in 2000 when she called off her one-month relationship with

5   Petitioner he began stalking her, calling at all hours, leaving notes on her car, and knocking on

6   her door.  (RT 1778-81.)  On one occasion shortly after their breakup, she was in her home with

7   a male friend when Petitioner called and said he did not like her having another man in the

8   house.  He called her a bitch and a whore, and seconds later a chair came flying through a

9   window.  (RT 1781-85.)  She admitted she did not see Petitioner throw the chair.  (RT 1795.)

10  While the police were there taking a report, Petitioner called, and while the police listened, he

11  said he was watching her and had a gun pointed at her.  (RT 1786-87.)  Seckman testified that

12  when she went away for a weekend, she returned and found "slut" written on a house window,

13  notes stuck to the front door and to her tires with hypodermic needles calling her a "whore and

14  a bitch and a slut," and flat tires on her vehicle.  (RT 1788-90.)

15         As recounted above, there was overwhelming direct evidence, in the form of the victim's

16  testimony, to support Petitioner's convictions for assault with caustic chemicals, making a

17  criminal threat, and corporal injury to a spouse or cohabitant, with the first independently

18  supported by bystander testimony, and the latter by photographic evidence.  The testimony of

19  O'Dell and Leicester involved physical assaults by Petitioner, whereas Seckman's testimony did

20  not involve physical assaults, and included her admission that she did not see Petitioner throw

21  the chair through the window.  The Court is certainly mindful of the reasons why live testimony

22  is preferred over reading prior testimony from a cold record.  See Yida, 498 F.3d at 950-52

23  (identifying such reasons as including the ability to observe the demeanor of the witness,

24  inability to update the testimony with recent events, lack of ability to expose inconsistencies

25  between new and prior testimony, and allowing the prosecution the opportunity to decide

26  whether live or prior testimony is more useful).  Nevertheless, as Seckman's testimony was less

27  powerful than, and largely cumulative to that of, O'Dell and Leicester, Petitioner has not shown

28  that the admission at his trial of Seckman's testimony from a prior trial without a finding that

1  the prosecutor had made a good-faith effort to secure her presence at trial had a "substantial and

2  injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.

3  Accordingly, the Court **DENIES** habeas relief with respect to Claim 4.

4  **3.    Certificate of Appealability**

5        The Court is mindful of the "relatively low" threshold for granting a Certificate of

6  Appealability, Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002), that "the petitioner

7  need not show that he should prevail on the merits," Lambright v. Stewart, 220 F.3d 1022, 1025

8  (9th Cir. 2000), but may be entitled to a certificate when the "questions are adequate to deserve

9  encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983) (citation

10 omitted), superseded on other grounds by 28 U.S.C. § 2253(c)(2).  The Court finds a Certificate

11 of Appealability is appropriate for all claims presented in the Petition.

12 **4.    Conclusion and Order**

13       The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the findings

14 and conclusions of the Magistrate Judge, as set forth above.  The Petition for a Writ of Habeas

15 Corpus is **DENIED**, and the Court **ISSUES** a Certificate of Appealability as to all claims

16 presented in the Petition.

17       The Clerk of Court shall enter judgment denying the Petition and issuing a Certificate of

18 Appealability as to all claims in the Petition.

19       **IT IS SO ORDERED.**

20 DATED:  September 1, 2015

21                                    _____
                                     BARRY TED MOSKOWITZ, Chief Judge
22                                   United States District Court

23

24

25

26

27

28

-10-                                                              13cv1756